SCOTT J. SAGARIA (BAR # 217981)
sjsagaria@sagarialaw.com
ELLIOT W. GALE (BAR #263326)
egale@sagarialaw.com
JOE B. ANGELO (BAR #268542)
jangelo@sagarialaw.com
SCOTT M. JOHNSON (BAR #287182)
sjohnson@sagarialaw.com
**SAGARIA LAW, P.C.**
3017 Douglas Blvd., Ste. 200
Roseville, CA 95661
408-279-2288 ph
408-279-2299 fax

Attorneys for Plaintiff
Kenneth Asay

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION

| | |
|---|---|
| **KENNETH ASAY,**<br><br>             Plaintiff,<br><br>     v.<br><br>Experian Information Solutions, Inc., LLC, Equifax Information Services, LLC; Gateway One Lending & Finance, LLC, and DOES 1 through 100 inclusive**,**<br><br>             Defendants. | CASE NO.<br><br>COMPLAINT FOR DAMAGES:<br><br>1. Violation of Fair Credit Reporting Act;<br>2. Violation of California Consumer Credit Reporting Agencies Act |

COMES NOW Plaintiff **KENNETH ASAY**, an individual, based on information and belief, to allege as follows:

## INTRODUCTION

1. This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), 15 U.S.C. § 1681e(b)) and the California Consumer Credit Reporting Agencies Act, California Civil Code §1785.25(a). Plaintiff seeks redress for the unlawful and deceptive practices

    committed by the Defendants in connection with their inaccurate, misleading, or incomplete reporting of Plaintiff's debt.

2. Here Gateway One Lending & Finance (hereinafter "Gateway") is reporting rolling charge offs on Plaintiff's account beginning in November of 2016 and continuing through October of 2017 despite a charge off being a one-time event.

3. Both Equifax and Experian are also reporting that Plaintiff filed for chapter 7 bankruptcy protection on November 1, 2820 and not the actual date of filing, November 28, 2017.

4. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

## JURISDICTION & VENUE

5. Plaintiff re-alleges and incorporates herein by this reference the allegations in each and every paragraph above, fully set forth herein.

6. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 15 U.S.C. § 1681

7. This venue is proper pursuant to 28 U.S.C. §1391(b)(1).

## GENERAL ALLEGATIONS

8. Plaintiff alleges that each and every Defendant is familiar with credit reporting industry standards and subscribes thereto.

9. Plaintiff alleges that each and every Defendant understands that deviation from credit reporting industry standards can and often does result in denial of credit, higher interest rates, and prompts those making credit decisions to draw a more negative inference from the reported data than if the Defendant reported in accordance with the recognized industry standard.

10. Plaintiff alleges that all actions alleged herein by Defendants were done knowingly, intentionally, and in reckless disregard for credit reporting industry standards in an attempt to purposefully undermine Plaintiff's ability to reorganize and repair Plaintiff's FICO Score.

11. In the alternative Plaintiff alleges that each and every Defendant's actions was the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

### FICO, Inc.

12. FICO is a leading analytics software company with its principal headquarters located in San Jose California. FICO has over 130 patents related to their analytics and decision management technology, and regularly uses mathematical algorithms to predict consumer behavior including credit risk.

13. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.

14. A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

15. Base FICO Scores range from 300 to 850, while industry-specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.

16. Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.

17. There are 28 FICO Scores that are commonly used by lenders.

18. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies (CRAs).

19. The three largest CRAs are Experian Information Solutions, Inc.; Equifax, Inc. and Transunion, LLC.

20. FICO does not control what information is provided on a consumer's credit report. Instead, the scoring models or algorithms are based on the premise that information provided by the CRAs is accurate and complies with credit reporting industry standards.

21. There are five key factors that a FICO Score considers: 1) Payment History 2) Amount of Debt 3) Length of Credit History 4) New Credit and 5) Credit Mix.

22. Each of the five factors is weighted differently by FICO.

23. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.
24. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments. The more severe, recent, and frequent the late payment information, the greater the impact on a FICO Score.  Public record items such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.
25. In factoring the severity of delinquent payments a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist.
26. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.
27. FICO Scores are entirely dependent upon information provided by data furnishers (DFs) to CRAs.

### Metro 2

28. The Consumer Data Industry Association is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.
29. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a debt. Specifically, Metro 2 format was designed to allow reporting of the most accurate and complete information on consumer's credit history.
30. The CDIA's Metro 2 format is the credit reporting industry standard for accurate credit reporting.
31. The credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.
32. The CDIA is *The* expert on accurate credit reporting. In support of this allegation Plaintiff avers the following:

   a. The CDIA offers a FCRA certificate program for all CRAs.
   b. The CDIA offers a FCRA awareness program for all CRAs.
   c. The CDIA offers a FCRA Certificate program for DFs.
   d. The CDIA offers a FCRA awareness program for DFs.
   e. The CDIA offers a GATEWAY 2 Learning system to provide detailed instructions on the use of GATEWAY 2 format to ensure understanding of the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.
   f. The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and Transunion.
   g. The CDIA developed a credit reporting resource guide for accurately reporting credit.

33. The CDIA's Metro 2 is accepted by all CRAs.
34. The credit reporting accepted industry standards for reporting Metro 2 accurately are found in the CDIA's credit reporting resource guide (CRRG).
35. The CRRG outlines the industry standards for most accurately reporting debts using Metro 2.
36. The three main credit bureaus helped draft the CRRG.
37. The CRRG is not readily available to the public. It can be purchased online for $229.45.
38. Even if a buyer is ready willing and able to pay for the CRRG, the CDIA will NOT grant access to the guide unless the buyer represents an organization included in the Metro 2 Access Policy.
39. When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.
40. The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.
41. If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results. If the resulting FICO Score is lower a consumer will be considered a higher credit risk resulting in less favorable lending terms.

### e-OSCAR

42. E-OSCAR is the web based Metro 2 compliant system developed by Experian Information Solutions, Inc.; Equifax, Inc.; TransUnion, LLC and Innovis that enables DFs and CRAs to create and respond to consumer credit disputes.

43. When a consumer sends a dispute letter to a CRA the CRA then sends an automated credit dispute verification (ACDV) via e-Oscar to the DF.

44. The ACDV contains within it Metro 2 codes next to certain data fields associated with a credit file e.g. "Account Type" "07" (07 in Metro 2 refers to a Charge Account).

### Metro 2 Payment History

45. A consumer credit report contains a payment history section

46. Each field corresponds to a particular month in a particular year.

47. Under Metro 2 when a consumer makes a scheduled timely payment a 0 is reported in the corresponding month and year payment history field.

48. The Metro 2 indicator "1" is reported in the corresponding month and year field when a consumer is 30 days late on a payment.

49. The Metro 2 indicator "2" is reported in the corresponding month and year field when a consumer is 60 days late on a payment.

50. The Metro 2 Indicator "3" is reported when a consumer is 90 days late, a "4" is reported when a consumer is 120 days late, a "5" is reported when a consumer is 150 days late, a "6" is reported when an account is 180 days later, and an "L" is reported when an account is eventually Charged Off.

51. The "L" sometimes manifests itself on credit reports as an "FP" or Failure to Pay.

52. Once an "L" is reported there should not be any subsequent payment history reported given that the account has been Charged Off and it is factually impossible to Charge off an account every month in perpetuity. A credit expert would find these "rolling Charge offs" inaccurate.

### Plaintiffs Dispute

53. On March 21 2018 Plaintiff ordered a three bureau credit report from Experian Information Solutions, Inc.; Equifax, Inc. and TransUnion, LLC to ensure proper reporting by Plaintiff's Creditors.

54. Plaintiff noticed several different trade lines on the March 21, 2018 credit report all reporting inaccurate, misleading, or incomplete information that did not comply with credit reporting industry standards.
55. One account with Gateway, continued to report the account having multiple charge off notations in Plaintiff's payment history despite a charge off being a one-time historical event.
56. Plaintiff also noticed that the date of his bankruptcy filing was listed incorrectly – instead of having the date of November 28, 2017 listed the credit report indicated the date of November 1, 2820.
57. In response, Plaintiff disputed the inaccurate tradelines including the Gateway trade line via certified mail with Experian Information Solutions, Inc.; Equifax, Inc.; and TransUnion, LLC on April 23, 2018.
58. Plaintiff also disputed the date of filing listed in the public records portion of his credit report as the date was nearly one thousand years in the future.
59. Plaintiff's dispute letter specifically put defendant Gateway on notice that its reporting of multiple or "rolling" charge offs was inaccurate because a charge off notation should be a single event.
60. Plaintiff is informed and believes that each CRA received Plaintiff's dispute letter and in response sent Plaintiff's dispute to each DF via an ACDV through e-OSCAR.
61. On May 24, 2018 after the statutory time period had elapsed for Plaintiff to receive a reinvestigation report from the CRAs, Plaintiff ordered a second three bureau credit reportfor the sole purpose to ensure Plaintiff's accounts had in fact been updated.
62. Gateway's account had not been updated.
63. Similarly, the date of Plaintiff's chapter 7 filing was not fixed and still reflected the incorrect date of November 1, 2820.

**Inaccuracy – Gateway**

64. Plaintiff was frustrated to see that Defendant Gateway did not properly update the accounts but instead was still reporting that the account was charged off each month between November of 2016 and October of 2017.

65. Gateway received Plaintiff's dispute, which contained information regarding the inaccuracy of the multiple charge offs reported between November 2016 and October 2017 yet Gateway continued to report that the account was charged off in each of those months.

66. Despite receiving notice that Plaintiff's account could not be charged off more than once Gateway continued to report that the account was charged off approximately 12 separate times.

67. Plaintiff's dispute letter, which Gateway received, indicated that a charge off is a one-time event.

68. Gateway's reporting implies that Plaintiff's account was charged off numerous time and most importantly more recently than when it actually occurred.

69. Gateway's reporting is inaccurate and misleading as it gives the perception that as recently as October of 2017 Plaintiff's account was charged off instead of November of 2016.

70. Such reporting would confuse a large population of consumers, lenders, landlords, insurance companies, and underwriters making Plaintiff appear much less credit worthy.

**Willfulness**

71. This was not a negligent act by Defendant Gateway but instead an intentional act to purposefully undermine Plaintiff's ability to effectively restore Plaintiff's credit.

72. By indicating that the account status as charged off on multiple occasions Gateway is intentionally making Plaintiff appear less credit worthy by not accurately and completely updating the tradeline.

73. Rather than mark the account as charged off in November of 2017 Gateway continues to report the account delinquent on an ongoing basis.

74. Such a scheme directly undermines the integrity of the credit reporting system at large.

**Inaccuracy – Date of Filing**

75. Plaintiff was frustrated to see that Defendants Equifax and Experian did not update the date of filing and still had it incorrectly listed as November 1, 2820.
76. Such reporting makes it appear that Plaintiff's bankruptcy will be reported for the next thousand years.
77. Any potential creditor and or employer will not be able to tell when Plaintiff filed bankruptcy and or how long the bankruptcy will remain on Plaintiff's credit report.
78. In addition such reporting completely throws off how FICO calculates the adverse impact on Plaintiff's credit report because according to Equifax Plaintiff's bankruptcy will appear for the next one thousand plus years.
79. Plaintiff will never be able to get past the two year mark given the reporting will occur for the next thousand years.

### Damages

80. Here, Plaintiff pulled the credit report at issue at a cost of $39.95, specifically for the sole purpose of verifying that the inaccuracies were fixed.
81. As a result of the incorrect reporting, Plaintiff has suffered economic loss, diminished credit, emotional harm, and excessive stress.
82. The actions of Experian, Equifax, and Gateway as alleged herein are acts in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b).

### FIRST CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))
Against Defendants and Does 1-100)

**Experian Information Solutions, Inc. and Equifax, Inc. – Failure to Assure Credit Reporting Accuracy.**

83. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.
84. Experian and Equifax violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff.

85. Had Experian and Equifax maintained reasonable procedures to assure maximum accuracy Experian would never have allowed Defendant Gateway to report the account as described herein.
86. Similarly had Experian and Equifax maintained reasonable procedures the incorrect reporting of Plaintiff's date of bankruptcy filing would have been updated and corrected.
87. As a result of Experian and Equifax's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: diminished credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

### Willfulness

88. The violations described herein by Experian and Equifax were willful, specifically the Credit Bureaus have intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.
89. Experian and Equifax intentionally sends consumer disputes to employees who do not live within the continental United States.
90. This is intentionally done to hide and or subvert a consumer's ability to confront individual directly responsible for approving accurate reporting.
91. These employees for Experian and Equifax receive little to know training concerning how to accurately report consumer debt.
92. Instead these employees are simply instructed to parrot whatever information a data furnisher provides regardless of whether or not that information is accurate. *See Saez v. Trans Union,* LLC, 621 F.Supp. 2d 1074, 1083, 1088 (D.Or. 2007); *Grigoryan v. Experian Info. Sols.*, Inc., 84 F. Supp. 3d 1044, 1091 (C.D. Cal. 2014); *Haykuhi Avetisyan v. Experian Info Sols.*, No. CV 14-05276-AB (ASX)
93. Experian and Equifax employees are regularly expected to review and approve over 90 disputes per day rendering less than five minutes to review, investigate, and respond to each dispute received.
94. Experian and Equifax has intentionally setup this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.
95. Given that Experian and Equifax helped draft the CRRG, and Plaintiff specifically referenced industry guidelines in the dispute letter Experian and Equifax knew that these

accounts were not reporting in a manner consistent with industry standards i.e. accurate, but chose to do nothing.

96. Consequently, Defendants Experian and Equifax is liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Experian and Equifax were at least negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

97. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian and Equifax in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## SECOND CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b))
Against Defendants and Does 1-100)

**Gateway – Failure to Reinvestigate.**

98. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

99. 15 USC 1681s-2(b) and 15 USC 1681i-(a)1 prohibits furnishers from providing any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate or misleading and requires a furnisher to update and or correct inaccurate information after being notified by a consumer reporting agency of a dispute by a consumer.

100. Defendant Gateway violated section 1681s-2(b) by failing to conduct a reasonable investigation and re-reporting misleading and inaccurate account information.

101. The CRAs provided notice to Gateway that Plaintiff was disputing the inaccurate and misleading information but Gateway failed to conduct a reasonable investigation of the information as required by Gateway.

102. Based on Plaintiff's dispute, Gateway should have known its account was not charged off at least 5 times.

103. The most basic investigation would have uncovered that reporting rolling charge offs couldn't possibly be accurate given that a charge off is a one-time event.

104. Such an investigation would be reasonable.

105. Plaintiff's dispute to Gateway was explicit in the request to investigate the rolling charge offs and update the charge off to make it a one-time entry.
106. The lack of investigation is unreasonable.
107. Plaintiff further alleges that Gateway and Professional have not properly trained those directly investigating disputes on Metro 2 generally or credit reporting industry standards and as such have developed reckless policies and procedures.

**Experian Information Solutions, Inc. – Failure to Reinvestigate Disputed Information.**

108. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.
109. After Plaintiff disputed the accounts mentioned above, Experian was required to conduct a reasonable investigation and to delete any information that was not accurate under 15 USC 1681i-(a)1.
110. Experian failed to conduct a reasonable investigation and failed to correct the misleading and or inaccurate statements on the account within the statutory time frame or at all.
111. Plaintiff alleges that Experian has its own independent duty to conduct a reasonable investigation 15 USC 1681i-(a)1.
112. Experian is not a passive entity bound to report whatever information a DF provides.
113. Experian failed to conduct a reasonable investigation because any basic investigation would have uncovered that Gateway was reporting in a manner that was factually impossible i.e. that an account was Charged Off on 12 separate occasions.
114. Experian would have known that Gateway's reporting of multiple charge offs was inaccurate but instead simply deferred to Gateway on the dispute, as verified by the reinvestigation report Plaintiff received from Experian.
115. Experian therefore did not do the most basic investigation.
116. Similarly Experian should have known, had any investigation been done, that it was impossible for Plaintiff to have filed for bankruptcy nine hundred years in the future.
117. Experian intentionally, willfully or with reckless disregard for Plaintiff's accuracy did no investigation whatsoever given that Experian general policy is to simply parrot whatever information a data furnishers sends.

118. Such policy and procedure inherently leads to inaccurate information being reported and therefore such an investigation is wholly unreasonably and reckless i.e. willful.

### THIRD CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))
Against Defendants and Does 1-100)

**Experian Information Solutions, Inc., Equifax Information Services, LLC – Failure to Review and Consider All Relevant Information.**

119. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

120. Experian and Equifax violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

121. As a result of Experian and Equifax violation of 15 U.S.C. § 1681i(a)(4), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

122. The violations by Experian and Equifax were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

123. In the alternative, Experian and Equifax were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

124. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian and Equifax in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

### FOURTH CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))
Against Defendants and Does 1-100)

**Experian Information Solutions, Inc., Equifax Information Services, LLC – Failure to Delete Disputed and Inaccurate Information.**

125. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

126. Experian and Equifax violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

127. As a result of Experian and Equifax's violation of 15 U.S.C. § 1681i(a)(5)(A), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

128. The violations by Experian and Equifax were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

129. In the alternative, Experian and Equifax were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

130. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian and Equifax in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**FIFTH CAUSE OF ACTION**
(Violation of California Consumer Credit Reporting Agencies Act
California Civil Code § 1785.25(a) Against Defendants and Does 1-100)

**Gateway – Reporting Inaccurate Information to Equifax and Experian**

131. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

132. In the regular course of its business operations, Gateway routinely furnish information to credit reporting agencies pertaining to transactions between Defendants and Defendant's consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.

133. Gateway intentionally and knowingly reported misleading and inaccurate account information to the CRAs that did not comply with well-established industry standards in an intentional attempt to have Plaintiff suffer diminished and reduced credit.

134. Plaintiff alleges that Gateway re-reported the information contained herein in violation of California Civil Code § 1785.25(a).

135. Plaintiff also alleges that Gateway had reason to know that the information reported on Plaintiff's accounts were misleading, inaccurate, incomplete, and did not comply with well-established credit reporting industry standards.

136. Plaintiff alleges that Gateway had reason to know that by not following well-established industry standards lenders will draw a more negative inference with respect to Plaintiff's credit worthiness.

137. Plaintiff alleges that the dispute letters from all three credit reporting agencies, the consumer data industry resource guide, and results of its investigation should have provided notice to Gateway of its misleading and inaccurate reporting.

138. Gateway failed to notify Experian Information Solutions, Inc. and Equifax that the information Defendant re-reported was inaccurate before the end of 30 business days, in violation of California Civil Code § 1785.25(a).

139. Gateway's communications of false information, and repeated failures to investigate, and correct their inaccurate information and erroneous reporting were done knowingly, intentionally, and in reckless disregard for their duties and Plaintiff's rights.

140. As a direct and proximate result of Gateway's willful and untrue communications, Plaintiff has suffered actual damages including but not limited to reviewing credit reports from all three consumer reporting agencies, time reviewing reports with counsel, sending demand letters, diminished credit score, emotional distress, frustration, and such further expenses in an amount to be determined at trial. Wherefore, Plaintiff prays for judgment as hereinafter set forth.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1. For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;
2. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n and California Civil Code § 1785.31;
3. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n; and California Civil Code § 1785.31
4. Award attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C. § 1681n & o; California Civil Code § 1785.31;
5. For determination by the Court that Creditor's policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, et seq.; and
6. For determination by the Court that Creditor's policies and practices are

unlawful and in negligent violation of 15 U.S.C. § 1681o.

Dated: June 1, 2018

**SAGARIA LAW, P.C.**
*/s/ Elliot Gale, Esq.*
Scott Sagaria, Esq.
Elliot Gale, Esq.
Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial of this matter by jury.

Dated: June 1, 2018

**SAGARIA LAW, P.C.**
*/s/ Elliot Gale, Esq.*
Scott Sagaria, Esq.
Elliot Gale, Esq.
Attorneys for Plaintiff